Case 2:20-cv-00038-SMJ    ECF No. 77    filed 11/02/20    PageID.952    Page 1 of 19

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 02, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| WASHINGTON STATE UNIVERSITY,<br><br>               Plaintiff,<br><br>  v.<br><br>PRO ORCHARD MANAGEMENT LLC, a Washington limited liability company; and APPLE KING LLC, a Washington limited liability company.<br><br>               Defendants. | No.   2:20-cv-00038-SMJ<br><br>**ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS AND GRANTING MOTION TO COMPEL** |

To begin, the Court denied Pro Orchard Management LLC ("Pro Orchard") and Apple King LLC's ("Apple King") (collectively, "Defendants") motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), ECF No. 37, at a hearing addressing other issues of concern. The motion addressed an inoperative complaint. Even so, the Court finds Plaintiff Washington State University ("WSU") has pleaded enough facts in its First Amended Complaint, ECF No. 10, to satisfy the *Iqbal* standard.

Also pending before the Court is WSU's motion to compel discovery. ECF No. 49. The Court grants the motion to compel.

ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS AND GRANTING MOTION TO COMPEL – 1

# BACKGROUND

WSU owns United States Plant Patent No. 21,710 ("Plant Patent"). ECF No. 10-1. The Plant Patent protects intellectual property developed by WSU called the "WA 2" apple cultivar. ECF No. 10 ("FAC")[1] ¶ 1. Breeding a new apple cultivar takes several years and involves many steps. *See* ECF No. 10-1. The WA 2 apple originated from a seed collected from the fruit of the "Splendour" cultivar, which WSU researchers fertilized with a "Gala" male parent. ECF No. 10-1 at 2. According to the Plant Patent, "'WA 2' is an attractive apple that is distinct in appearance from that of other commercially grown apples and has outstanding texture, being very firm, crisp and juicy, both fresh and after 60 days of regular cold storage." *Id*. at 2–3.

Before the Plant Patent issued, WSU assigned the patent application to Washington State University Research Foundation ("Research Foundation"), a nonprofit corporation that formerly handled technology licensing for WSU. *Id*. ¶ 11. The Research Foundation thus owned the Plant Patent when it issued, but later reassigned it to WSU, and WSU continues to hold the Plant Patent today. *Id*.

In February 2011, the Research Foundation started entering Non-Exclusive License Agreements for WA 2 with Washington growers. *Id*. ¶ 12. The Research

---

[1] Though this docket entry contains WSU's First Amended Complaint, this memorandum will refer to it simply as the "Complaint" for clarity and brevity.

ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS AND GRANTING MOTION TO COMPEL – 2

Foundation entered a Non-Exclusive License Agreement ("Agreement") for WA 2 apples with Keller Fruit, Inc. ("Keller Fruit"), a grower. *Id.* ¶ 14. Pro Orchard likewise grows apples. *Id.* ¶ 3. Apple King packs and sells apples. *Id.* ¶ 3. Defendants have the same owners as Keller Fruit. *Compare* ¶¶ 3 & 4 *with* ¶ 14.

The Agreement granted Keller Fruit the right to propagate, use, and sell WA 2 apple trees or apples. *Id.* ¶ 16. It did not grant any rights to Pro Orchard or Apple King. *Id.* ¶ 16. Defendants learned of the Plant Patent shortly after it was issued. *Id.* ¶ 18; *see also* ECF No. 27 ¶ 18 (Defendants admit in their Answer that "they 'have been aware of Plant Patent No. 21,710.'").

WSU alleges Pro Orchard "has grown WA 2 trees, asexually reproduced WA 2 trees, harvested apples from WA 2 trees, and consigned WA 2 apples for sale," all without a license. *Id.* ¶ 19. WSU alleges in detail that Pro Orchard has (1) made the patented plant by asexually reproducing WA 2 trees through grafting; (2) used the patented plant by growing WA 2 trees and harvesting their apples; and (3) sold the patented plant by consigning WA 2 apples for sale. *Id.* ¶¶ 20–23. Defendants admit these allegations in their Answer: "Keller Fruit Inc. d/b/a Defendant Pro Orchard Management has grafted, planted, and grown WA 2 trees, and consigned them for sale to Apple King." ECF No. 27 ¶ 21.

WSU also alleges Defendants have induced third parties to infringe its Plant Patent. FAC ¶ 24. By consigning WA 2 apples that Pro Orchard has harvested to

Apple King for Apple King to sell, WSU alleges Pro Orchard has induced Apple King to infringe its Plant Patent. *Id*.

WSU alleges it has not licensed Apple King to sell the WA 2 apples. *Id*. ¶ 26. Apple King packs the unlicensed WA 2 apples that it receives on consignment from Pro Orchard and then sells them to third parties. *Id*. Apple King sells these consigned WA 2 apples through brokerage firms. *Id*. Right now, WSU does not know the persons or entities that bought the WA 2 apples from Apple King. *Id*.

In sum, WSU claims Defendants have directly infringed its patents and induced others to infringe its patent. *See generally id*.

Defendants move for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). ECF No. 37. Defendants argue WSU has failed to allege they make, use, offer to sell, or sell WA 2 apples; Apple King cannot be a direct infringer because, as consignee, it did not sell any WA 2 apples; providing scion wood is not an infringing act; and neither Apple King nor Pro Orchard has induced infringement even if either provided WA 2 scion wood to third-party growers. *See generally id*. It also claims WSU omits several necessary parties requiring mandatory joinder. *Id*. at 19–21.

WSU opposes the motion. ECF No. 41. WSU argues it has plausibly alleged direct infringement against both Pro Orchard and Apple King. *Id*. at 12–19. Pro Orchard (1) grafted the patented plant, which constitutes asexual reproduction; (2)

ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS AND GRANTING MOTION TO COMPEL – 4

grew WA 2 fruit trees and harvested the fruit, which constitutes use of patented plant; and (3) sold the patented plant by consigning WA 2 apples to Apple King for sale. *Id.* at 13. WSU alleges that "Apple King packs the unlicensed WA 2 apples that it receives on consignment from Pro Orchard Management and then sells them to third parties," without a license to do so. *Id.* at 14. It further contends it has plausibly alleged induced infringement. *Id.* at 19–24. And other potentially infringing growers are neither necessary nor indispensable parties. *Id.* at 24–27. In the event the Court grants Defendants' motion, WSU finally asks the Court to grant it leave to amend. *Id.* at 24.

WSU also moves to compel Defendants to respond to seven interrogatories and six requests for production ("RFP") seeking discovery on Defendants' infringing activities and affirmative defenses. Defendants responded to the motion to compel, ECF No. 54, WSU replied, ECF No. 57, and Defendants filed a surreply, ECF No. 60.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The complaint need not provide "detailed factual allegations," but it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S.

ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS AND GRANTING MOTION TO COMPEL – 5

544, 555 (2007). Plaintiffs must plead enough facts "to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Though *Iqbal* announced the standard governing a Rule 12(b)(6) motion, the Ninth Circuit has "said that Rule 12(c) is 'functionally identical' to Rule 12(b)(6) and that 'the same standard of review' applies to motions brought under either rule." *U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "[W]hether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. District courts must accept as true all factual allegations in the complaint and construe the complaint, and resolve all doubts, in the light most favorable to the plaintiff. *See id*.; *see also McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988).

//

//

ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS AND GRANTING MOTION TO COMPEL – 6

# DISCUSSION

## MOTION FOR JUDGMENT ON THE PLEADINGS

As an initial matter, the Court denies Defendants motion for judgment on the pleadings because it addressed an inoperative complaint. WSU filed its Complaint on January 22, 2020. ECF No. 1. WSU then filed its First Amended Complaint on March 5, 2020. ECF No. 10. Defendants filed its motion for judgment on the pleadings on August 11, 2020. ECF No. 37. Defendants motion addressed the allegations in the initial Complaint but not the First Amended Complaint. *See id*.

An amended complaint supersedes the original complaint and renders it without legal effect. *E.g.*, *Lacey v. Maricopa County*, 693 F.3d 896, 927 (9th Cir. 2012); *Rhodes v. Robinson*, 621 F.3d 1002, 1005 (9th Cir. 2010) ("As a general rule, when a plaintiff files an amended complaint, [t]he amended complaint supersedes the original, the latter being treated thereafter as non-existent.") (internal citation and quotation marks omitted). The parties (and the Court) must therefore treat the original pleading filed by WSU as nonexistent. *See id*.

Even though Defendants' motion addressed a nonexistent complaint, WSU's First Amended Complaint satisfies the *Iqbal* standard. To begin with, the Court notes the elements a plaintiff must plead to state a claim of patent infringement. Infringement occurs when a defendant "(1) without authority (2) makes, uses, offers to sell, sells, or imports (3) the patented invention (4) within the United States, its

territories, or its possessions (5) during the term of the patent." *Van Well Nursery, Inc. v. Mony Life Ins. Co.*, 421 F. Supp. 2d 1321, 1334 (E.D. Wash. 2006); 35 U.S.C. § 271(a).

To prove the third element in a plant patent infringement action, "the patentee must prove [under 35 U.S.C. § 163] that the alleged infringing plant is an asexual reproduction, that is, that it is the progeny of the patented plant." *Imazio Nursery, Inc. v. Dania Greenhouses*, 69 F.3d 1560, 1569 (Fed. Cir. 1995). "The 'asexual reproduction question,' . . . is critical to the infringement analysis." *Id*. "The statute requires asexual reproduction of the patented plant for there to be infringement." *Id*. at 1570. "Asexual reproduction . . . means the progeny of the patented plant via grafting, budding, cuttings, layering, division and the like, but not by seeds."[2] *Id*. at 1569 (citation and quotation marks omitted); *J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc.*, 534 U.S. 124, 132 (2001) ("Asexual reproduction occurs by grafting, budding, or the like, and produces an offspring with a genetic combination identical to that of the single parent—essentially a clone.").

For a plant patent, the patentee has "the right to exclude others from asexually reproducing the plant, and from using, offering for sale, or selling the plant so

---

[2] The Federal Circuit "construe[s] the term 'asexual reproduction' in section 163 in the same way as [it does] in section 161." *Imazio Nursery*, 69 F.3d at 1569.

ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS AND GRANTING MOTION TO COMPEL – 8

reproduced, or any of its parts." *Id.* § 163.[3] "[S]ection 163 is plain in its statement that a patentee may exclude others from asexually reproducing, selling or using the plant." *Yoder Bros. v. California-Fla. Plant Corp.*, 537 F.2d 1347, 1383 (5th Cir. 1976). "The negative inference to be drawn from this is that commission of one of those acts would constitute infringement." *Id.*

A.   **Direct Infringement**

   1.   **Pro Orchard**

WSU alleges detailed facts describing how Pro Orchard has (1) made the patented plant by asexually reproducing WA 2 trees through grafting; (2) used the patented plant by growing WA 2 trees and harvesting their apples; and (3) sold the patented plant by consigning WA 2 apples for sale. FAC ¶¶ 20–23; ECF No. 41 at 13.

*Grafting* WA 2 apple trees constitutes asexual reproduction—an infringing activity. *See Imazio Nursery*, 69 F.3d at 1569; *Yoder Bros.*, 537 F.2d at 1383. *Using* those asexually reproduced WA 2 trees to grow fruit also constitutes patent infringement. *See* 35 U.S.C. § 271(a); 35 U.S.C. § 163; *see also Regents of Univ. of California v. California Berry Cultivars, LLC*, No. 16-CV-02477-VC, 2017 WL 9531948, at *7 (N.D. Cal. Apr. 27, 2017) (growing fruit constitutes *use* of the

---

[3] "The provisions of this title relating to patents for inventions shall apply to patents for plants, except as otherwise provided." *Id.* § 163.

ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS AND GRANTING MOTION TO COMPEL – 9

patented plant). If proven, asexually reproducing WA 2 trees by grafting, and using the grafted trees to grow WA 2 apples, "would constitute infringement." *See Yoder Bros.*, 537 F.2d at 1383.

Defendants appear to admit these allegations in their Answer: "Keller Fruit Inc. d/b/a Defendant *Pro Orchard Management* has grafted, planted, and grown WA 2 trees, and consigned them for sale to Apple King." ECF No. 27 ¶ 21 (emphasis added).

The Court concludes WSU pleaded enough facts to maintain a plausible claim of direct infringement against Pro Orchard.

### 2. Apple King

WSU next alleges Apple King packs the unlicensed WA 2 apples that it receives on consignment from Pro Orchard and then sells them to third parties. FAC ¶ 26. Apple King argues packing does not constitute "using" an apple for plant patent purposes. At a hearing addressing other issues, WSU appeared to concede that it was not pursuing a claim of direct infringement against Apple King. Tr. (Oct. 28, 2020); *but cf.* ECF No. 41 at 10 ("[The First Amended Complaint] alleges Apple King directly infringed by packing and selling the WA 2 apples it received from Pro Orchard."). The Court will not foreclose a WSU's claim of direct infringement against Apple King based on that off-the-cuff remark alone.

In statutory construction cases, "we begin, of course, with the language of

the statute." *Diamond v. Chakrabarty*, 447 U.S. 303, 308 (1980). Unless otherwise defined, courts interpret words "taking their ordinary, contemporary common meaning.'" *Id.* (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979). "We have also cautioned that courts 'should not read into the patent laws limitations and conditions which the legislature has not expressed.'" *United States v. Dubilier Condenser Corp.*, 289 U.S. 178, 199 (1933). Moreover, "subject-matter terms have been interpreted broadly to evolve with developments in science and technology." *J.E.M. Ag Supply*, 534 U.S. at 137 n.9.

The term "use" has many definitions, but "[i]n terms of the infringing act of 'use,' courts have interpreted the term 'use' broadly." *NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1316 (Fed. Cir. 2005), *abrogation on other grounds recognized in Avid Tech., Inc. v. Harmonic, Inc.*, 812 F.3d 1040, 1047 (Fed. Cir. 2016). "[U]se," . . . is a 'comprehensive term and embraces within its meaning the right to put into service any given invention.'" *Id.* (quoting *Bauer & Cie v. O'Donnell*, 229 U.S. 1, 10–11 (1913)).

Defendants argue "[t]he way to use an apple is to eat it." ECF No. 47 at 7. True, that's one way to use an apple. But there are many other ways to "use" an apple. As WSU stresses, "To 'pack' apples has a specific meaning in the apple industry, which involves an extensive process of receiving apples from growers; washing them; testing them for starch and sugar content; sorting the apples for

color, size and quality; coating them with wax; packing them in boxes; storing some apples under refrigeration; and storing others with higher starch content in sealed, controlled atmosphere rooms to allow starch to change to sugar." ECF No. 41 (citation omitted). Of course, packing WA 2 apples puts them into service for further use and eventual consumption. But the packing process itself uses the apples to prepare them for distribution into the market.

The Court finds WSU pleaded enough facts to maintain a plausible claim of direct infringement against Apple King. WSU also alleges Apple King sells the apples, but the Court declines to reach these arguments because "commission of one of those acts [for example, "using" WA 2 apples] would constitute [direct] infringement." *See Yoder Bros.*, 537 F.2d at 1383.

**B.     Induced Infringement**

"Whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). To succeed on a claim of inducement, the patentee must show (1) a direct infringement, (2) the alleged infringer knowingly induced infringement, and (3) the alleged infringer possessed specific intent to encourage another's infringement. *Minnesota Min. & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1304–05 (Fed. Cir. 2002).

WSU has pleaded enough facts to maintain a plausible claim of direct infringement against Defendants. *See Part A infra*.

### 1. Knowledge of the patent

WSU alleges that Defendants "have been aware of Plant Patent No. 21,710 since shortly after the patent issued on February 15, 2011." FAC ¶ 18. Defendants admitted in their Answer that "they 'have been aware of Plant Patent No. 21,710.'" ECF No. 27 ¶ 18. WSU has thus satisfied this element.

### 2. Specific intent to induce infringement

WSU must also establish that Defendants possessed specific intent to encourage another's infringement and not merely that Defendants knew the acts alleged to constitute inducement. *See Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed. Cir. 1990). "The plaintiff has the burden of showing that the alleged infringer's actions induced infringing acts *and* that he knew or should have known his actions would induce actual infringements." *Id.* (emphasis in original). Specific intent to encourage infringement "can be shown by circumstantial evidence, but the mere knowledge of possible infringement will not suffice." *Vita–Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009).

WSU alleges that Defendants provided WA 2 scion wood to unlicensed third parties, so that those parties could "asexually reproduce WA 2 trees." FAC ¶¶ 1, 24. WSU also alleges that "Pro Orchard Management has induced Apple King to infringe Plant Patent No. 21,710 by consigning WA 2 apples that it has harvested

to Apple King for Apple King to sell." *Id.* ¶ 25. It further alleges Pro Orchard induced Apple King to infringe its plant patent by providing WA 2 apples to Apple King to pack. *Id.* ¶ 26. In other words, providing these unlicensed materials to third parties supports a plausible inference that Defendants acted with specific intent to encourage unlicensed asexual reproduction of WA 2 trees and the unlicensed growing, packing, and sales of WA 2 apples. Together with Defendants' admitted knowledge of the patent, WSU has plausibly alleged that Defendants acted with specific intent for these unlicensed third parties to infringe its patent.

The Court finds WSU has plausibly alleged claims of induced infringement against Defendants.

**C.    Mandatory Joinder**

Defendants argue that the Court should dismiss the lawsuit because all the growers who provide unlicensed WA 2 apples to Apple King for sale by consignment are necessary parties under Rule 19(a). ECF No. 37 at 18. WSU argues even if additional growers are consigning unlicensed WA 2 apples to Apple King, they are neither necessary nor indispensable parties. The Court agrees with WSU.

"'Courts have long held in patent, trademark, literary property, and copyright infringement cases, any member of the distribution chain can be sued as an alleged joint tortfeasor.'" *Costello Pub. Co. v. Rotelle*, 670 F.2d 1035, 1043 (D.C. Cir. 1981) (citation omitted). "'Since joint tortfeasors are jointly and severally liable,

ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS AND GRANTING MOTION TO COMPEL – 14

the victim of . . . infringement may sue as many or as few of the alleged wrongdoers as he chooses; those left out of the lawsuit, commentary underscores, *are not indispensable parties.*'" *Id.* (emphasis added). WSU may therefore sue any entity or person in the supply chain "it sees fit." *See id.*

In sum, WSU has stated a plausible claim for relief and Defendants are thus not entitled to judgment on the pleadings. The Court denies the Defendants' motion.

**MOTION TO COMPEL**

The Court "start[s] with the premise that pre-trial discovery is ordinarily 'accorded a broad and liberal treatment.'" *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). "This broad right of discovery is based on the general principle that litigants have a right to 'every man's evidence,' and that wide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for the truth." *Id.* (quoting *United States v. Bryan*, 339 U.S. 323, 331 (1950)). Federal Rule of Civil Procedure 26(b) provides that parties may obtain discovery on:

> [A]ny nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). Relevant information "need not be admissible in evidence

to be discoverable." *Id.* A court "must limit the frequency or extent of discovery otherwise allowed" if

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C).

"A party seeking discovery may move for an order compelling an answer, . . . production, or inspection." Fed. R. Civ. P. 37(a)(3)(B)(iii), (iv). "[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4).

Under Federal Rule of Civil Procedure 33, "a party may serve on any other party no more than 25 written interrogatories" relating "to any matter that may be inquired into under Rule 26(b)." Fed. R. Civ. P. 33(a). "The responding party must serve its answers and any objections within 30 days after being served with the interrogatories." Fed. R. Civ. P. 33(b)(2). "Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). "The grounds for objecting to an interrogatory must be stated with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." Fed. R. Civ. P. 33(b)(4). Finally, responses to interrogatories must be verified. Fed. R. Civ. P. 33(b)(5) ("The person who makes

ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS AND GRANTING MOTION TO COMPEL – 16

the answers must sign them, and the attorney who objects must sign any objections.").

Under Federal Rule of Civil Procedure 34, a "party may serve on any other party a request within the scope of Rule 26(b)" for production of documents "in the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a). "The party to whom the [Request for Production] is directed must respond in writing within 30 days after being served." Fed. R. Civ. P. 34(b)(2)(A). The requesting party "is entitled to individualized, complete responses to each of the [Requests for Production] . . ., accompanied by production of each of the documents responsive to the request, regardless of whether the documents have already been produced." *Louen v. Twedt*, 236 F.R.D. 502, 505 (E.D. Cal. 2006).

Here, WSU initially sought an order compelling

> (1) Apple King, LLC to fully respond to Interrogatories Nos. 1-7 and RFP Nos. 1-6, and produce all documents responsive to RFP Nos. 1-6; and (2) Pro Orchard Management, LLC to fully respond to Interrogatories Nos. 1-6 and RFP Nos. 2-3 and 5-6, and produce all documents responsive to RFP Nos. 1-6.

ECF No. 49. Defendants argue that they have since responded to WSU's requests, mooting in part the motion to compel. ECF No. 54. WSU acknowledges the supplemental responses moot its motion in part yet claims most of the supplemental responses and requests for production remain deficient. ECF No. 57 at 5.

The Court agrees with Defendants that cooperation among the litigants is

critical, *see* ECF No. 54, and the parties shall cooperate throughout the discovery phase of this suit. So, the Court grants WSU's motion to compel. Defendants shall cooperate and provide complete responses to WSU's interrogatories and requests for production. The Court does not want to see another discovery motion suggesting Defendants provided "an evasive or incomplete disclosure, answer, or response." *See, e.g.*, Fed. R. Civ. P. 37(a)(4).

## ORDER TO SHOW CAUSE

The Court ordered counsel for Defendants to show cause why the conduct specifically described in its Order, ECF No. 70, had not violated Federal Rule of Civil Procedure 11(b), Local Civil Rule 83.2(d)(3), and Washington Rule of Professional Conduct 3.3(a)(3). Defense counsel timely filed their response and provided several declarations in support. ECF Nos. 71, 72, 73, 74 & 75. Upon further review, the Court has decided not to impose sanctions.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendants' motion for judgment on the pleadings, **ECF No. 37**, is **DENIED**.

2. Plaintiff's motion to compel, **ECF No. 49**, is **GRANTED**, as amended in ECF No. 57.

3. Within **seven days** of entry of this Order, Apple King, LLC shall (a) serve full responses to Interrogatories Nos. 1–4 and 6, verified under

oath; and (b) serve supplemental responses to RFP Nos. 3–4 and 6, and produce all documents responsive to RFP Nos. 1, 3–4, and 6.

4. Also, within **seven days** of entry of this Order, Pro Orchard Management, LLC shall (a) serve full responses to Interrogatories Nos. 1–5, verified on oath; and (b) produce all documents responsive to RFP Nos. 1, 3–4, and 6.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 2nd day of November 2020.

_____
SALVADOR MENDOZA, JR.
United States District Judge

ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS AND GRANTING MOTION TO COMPEL – 19